Arnold L. Fein, J.
Defendant orally engaged plaintiff, a licensed real estate broker, to secure a purchaser for defendant’s real property, at a price of $475,000, terms all cash over mortgages, commission to be at real estate board brokers’ rates. No time limit was fixed for performance. On being advised by plaintiff that it had a purchaser on these terms, defendant requested the broker to provide a letter to that effect from the prospective purchaser. Plaintiff obtained and on July 16, 1965, sent defendant a letter from the prospective purchaser’s attorneys, addressed to plaintiff, dated July 15, 1965, reading in pertinent part: ‘ ‘ Our client has authorized us to advise you that they are prepared, subject to the execution and delivery of a formal agreement of purchase and sale satisfactory to us, to purchase the above-entitled premises for $475,000 by payment of 10% thereof on signing of the contract, $127,500 at closing and the balance by taking subject to the existing first mortgage in the sum of $300,000, said mortgage being due on March 31, 1966, with provision for annual payment of $25,000 which includes interest at the rate of 6%.
“ When the contract of sale is prepared, please forward the same to us and we will communicate with you or counsel for the seller thereafter.”
Defendant turned the letter over to his attorney, who prepared a formal contract incorporating these precise terms, and indicating in the usual form that plaintiff was the broker. The attorney gave a copy to plaintiff late in the afternoon of July 22, 1965, to forward to the prospective purchaser’s attorneys. Plaintiff mailed it to them the following day.
By letter dated July 27, the prospective buyer’s attorneys advised plaintiff that the contract contained “ of course, a number of provisions which raise serious questions ”, which had to be discussed with their client. What these “ serious questions ’ ’ were was not developed at trial. The prospective purchaser’s attorneys were not called as witnesses. The attorneys’ letter also stated they would arrange with defendant’s attorney for “ an inspection ” of “ the survey and the lease ”, and requested an opportunity to inspect a prior title report if one existed. On July 28, plaintiff forwarded a copy of this *92 letter to defendant, after reading it to him over the phone. On July 27 or July 28, prospective buyer’s attorney and defendant’s attorney had a telephone conversation relating to the contract. In a letter to prospective buyer’s attorneys, dated July 29, defendant’s attorney stated: “ This contract was subject to immediate acceptance.
“ Having received no communication from you during this period, I must therefore assume that we have no deal and accordingly request that the contract be returned to me.”
This was the first time that either plaintiff or the prospective purchaser was advised that the deal was subject to “ immediate acceptance ” of the formal contract.
On Friday, July 30, defendant advised plaintiff the contract would have to be signed by the following Monday, August 2, or the deal was off. On the same day, July 30, the prospective purchaser’s attorneys wrote defendant’s attorney confirming their telephone conversation setting up a meeting for Tuesday, August 3, 1965. That meeting never took place. Thereafter, despite the pleas of plaintiff and the prospective buyer, defendant refused to go further with the deal. No formal written contract of sale was signed and no sale took place.
There is no merit to the defense founded upon that portion of the prospective purchaser’s ''attorneys’ letter which stated that their client was prepared to purchase the property “ subject to the execution and delivery of a formal agreement of purchase and sale satisfactory to us”. In an action for brokerage commission the right to recover turns upon whether the broker has performed his agreement with his principal, not on consummation of the sale, or execution of the contract, unless expressly so conditioned. The standard by which the broker’s performance is to be measured is to be found in the brokerage agreement, not the agreement or proposed agreement between buyer and seller. (Lane-Real Estate Dept. Store v. Lawlett Corp., 28 N Y 2d 36; Hecht v. Meller, 23 N Y 2d 301; Levy v. Lacey, 22 N Y 2d 271; Arnold v. Schmeidler, 144 App. Div. 420.) As these and other cases hold, when the owner fixes the precise price and terms upon which he will .sell, the broker earns his commission when he produces a buyer ready, willing and able to buy at such price and terms, unless the brokerage agreement conditions the right to brokerage upon some other condition or event, such as the execution or performance of the contract of sale, delivery of the deed, or payment of the agreed consideration.
*93 Kaelin v. Warner (27 N Y 2d 352), relied on "by defendant, is not to the contrary. There, the price was fixed, but ‘ ‘ with terms to be arranged ’ In denying recovery to the broker, because the prospective purchaser and the owner were unable to agree as to the essential, basically financial terms, the court was careful to lay down the distinction between cases (1) where the price is fixed and the terms are open, and (2) where both price and terms are fixed and agreed upon (27 N Y 2d 352, 355): “"We deem it settled that ‘ mere agreement as to price on a proposed sale of real property does not constitute a meeting of the minds of vendor and vendee so as to entitle the real estate broker to commissions. The parties must be brought to agreement with respect to all terms customarily encountered in such a transaction.’ (Matter of Altz, 274 App. Div. 894, affd. 300 N. Y. 607; Sibbald v. Bethlehem Iron Co., 83 N. Y. 378, 382; see, also, Thompson & Co. v. New Madison Sq. Garden Corp., 225 App. Div. 521, 522; Arnold v. Schmeidler, 144 App. Div. 420; Haase v. Schneider, 112 App. Div. 336; Pearsen v. Lemken, 34 Misc 2d 636, 640). The fact that, in the case before us, the brokerage agreement obligated the plaintiff to procure a purchaser for $100,000, ‘ with terms to be arranged, ’ in no way alters this principle. Where an owner merely specifies the purchase price of property, without fixing the other terms of sale, commissions are not earned until and unless the person produced by the broker reaches an agreement with the owner not only as to price but also as to the terms upon which the sale is to be made. (See, e.g., Arnold v. Schmeidler, 144 App. Div. 420, 427, supra; House v. Hornburg, 267 App. Div. 557, 561; see, also; Restatement, Second, Agency, § 445, comment d, p. 347; Biskind and Barasch, Law of Real Estate Brokers [1969], § 67.01, pp. 165-166.) ”
Here it is undisputed that all of the parties were in complete agreement as to all of the financial terms. The precise price and terms originally fixed by the owner when he engaged the broker were accepted by the prospective purchaser, as evidenced by the broker’s report to the defendant, the prospective purchaser’s attorneys’ letter to the plaintiff, furnished to defendant, and the contract prepared by defendant’s attorney. These included “ all terms customarily encountered in such a transaction.” (Matter of Altz, 274 App. Div. 894, supra; see Arnold v. Schmeidler, 144 App. Div. 420, supra).
Before the owner called off the deal, the broker had produced a buyer ready and willing (ability was conceded) to buy at the price and upon the essential terms fixed by the *94 owner. The fact that all of the legal and other details respecting the contract, customarily worked out between attorneys, had not yet been resolved could not defeat the broker’s right to commission. (Mengel v. Lawrence, 276 App. Div. 180.) The brokerage agreement did not condition the broker’s rights upon agreement as to such terms or upon the execution of a contract, although it could have done so. The broker had performed and was entitled to its commission.
Defendant’s subsequent equivocal attempt to require “ immediate acceptance ” of the formal written contract was a condition neither included in the oral brokerage agreement nor originally imposed upon the prospective buyer. Moreover, the evidence would not support a finding that it was a real condition in terms of fixing a specific time limitation. It is noted that the proposed contract fixed the closing date as November 1, 1965, some three months later. That the attempted time limitation may have prevented the attorneys from working out the details of the contract does not aid defendant. Defendant cannot avail himself of the nonperformance of such an imprecise condition, belatedly imposed by him, so as to defeat plaintiff’s rights (Mengel v. Lawrence, 276 App. Div. 180, supra).
The broker had done all that the oral contract of employment required.
Plaintiff is entitled to judgment in the sum of $12,500, plus interest from July 17, 1965.