J. AMOS HOUSE et al., Respondents, *v.* CELIA HORNBURG, Appellant.

Fourth Department, March 15, 1944.

*Clarence Z. Spriggs* and *James Stafford* for appellant.

*Barton C. Meays* for respondents.

LARKIN, J. Plaintiffs are real estate brokers. In August, 1941, defendant, by a so-called listing agreement, authorized them to find a purchaser for her farm of 153 acres, together with the stock and equipment thereon. The purchase price of the bare farm was $7,500. Plaintiffs were authorized to sell the personalty to any purchaser of the farm for $5,000 addi-

tional. While the terms of her offer did not specify that fact, both parties understood the sale was to be for cash. Other than stating the rate of commission and providing for proration of interest, taxes and insurance, the only other terms of sale fixed by the agreement were that defendant would convey the property by good and sufficient deed and furnish an abstract of title to the date of conveyance. This listing agreement was signed by the parties. On the reverse side of the paper containing defendant's authorization of sale was a description of the farm and a detailed list of the personalty. There was also written on the reverse side this phrase "Possession as soon as possible," which defendant had written thereon before delivering the agreement to plaintiffs. The latter, when they received it, observed this clause. It is clear from all the testimony that both parties treated it as one of the terms of defendant's offer to sell, and that it referred to the time when defendant would give possession in case of a sale, either of the farm or the farm with stock and equipment. From the early part of August, 1941, until March 12, 1942, plaintiffs brought several prospective buyers to the property, but no sale was made. Early in March plaintiffs interested one Pomeroy in the farm. On March 12, 1942, they presented to defendant a writing signed by Pomeroy, and designated therein as an offer to buy her farm, but which, had defendant accepted and signed, would have constituted a contract of purchase and sale between her and Pomeroy for the bare farm, at the price of $7,500, of which $400 was paid as a deposit and the balance was to be paid when the transaction was closed by the conveyance which, at the option of the purchaser, could have been May 1, 1942. Pomeroy's offer further required a warranty deed with tax search, in addition to the abstract of title. Defendant refused to sign it. The only reasonable inference from the testimony, which is not too clear, is that defendant's objection was based upon the construction placed by plaintiffs on the term "Possession as soon as possible," in that Pomeroy's offer failed to accord her any right of possession after she had received the full purchase price in cash and delivered the deed. While the record is, again, not perfectly clear as to this feature, the further reasonable construction of the testimony is that after considerable discussion between plaintiffs, Pomeroy and defendant, she made a counterproposal to accept the offer provided she could find a suitable farm onto which she could move her stock and equipment. For several weeks plaintiffs showed defendant's son, who operated the property for her, various farms which were for sale. None was found accept-

able to defendant. However, there is no evidence to warrant a finding of any bad faith on defendant's part in the attempt which plaintiffs made to comply with her counterproposal, nor was any suggested on the argument of the appeal. About the first of April the prospective purchaser withdrew his offer and plaintiffs, who had retained the deposit of $400, returned that to him. Thereafter, Pomeroy bought another farm. Plaintiffs then brought this action to recover their commission on the theory that they had found a purchaser, in Pomeroy, ready, willing and able to buy defendant's farm on the terms contained in the written listing agreement, as the parties themselves had interpreted it. The trial court, in substance, held that the only question of fact was the financial ability of Pomeroy to complete the purchase on May 1st, and submitted that question, only, to the jury, which found a verdict in favor of plaintiffs.

The law applicable to an action of this character is plain. A real estate broker earns his commissions when he produces a buyer willing and able to purchase on the terms of the seller's offer. However, it is necessary that the broker bring the parties together, not only on the price but also as to all essential terms of a closing contract, before his commissions are earned. (*Saum* v. *Central Realty Development Corp.*, 268 N. Y. 335, 342, citing with approval *Arnold* v. *Schmeidler*, 144 App. Div. 420.) In the *Arnold* case real estate brokers' contracts are classified as follows: 1. Where the owner has given the broker full and complete terms upon which he is willing to sell, and not merely the price; 2. Where the owner lists his property for sale, and may or may not set the price, but does not fix all the essential terms of the transaction, leaving them to be determined later. In the first class of cases the commissions are earned when the broker has produced a customer ready and able to comply with the owner's terms. In the second category the commissions are not earned until the customer produced by him reaches an agreement with the owner on price and terms, if price has not been fixed, and, if it has, then upon the other terms of the sale. This rule has been frequently applied in numerous cases. (*Haase* v. *Schneider*, 112 App. Div. 336; *Dugas* v. *Bashwitz Bros. & Co.*, 179 App. Div. 156; *Strout Farm Agency* v. *DeForest*, 192 App. Div. 790, 792; *Gallagher* v. *Dullea*, 199 App. Div. 119; *Verity* v. *Ottinger*, 223 App. Div. 344, 346; *Cohn* v. *Reich*, 106 Misc. 504; *Brocher* v. *Olcott*, 130 Misc. 859; *Smith* v. *Herrman*, 130 Misc. 832, 834.) Of these decisions, perhaps the two most significant, as applicable to the instant situation, are the *Haase* and *Strout* cases. When this defendant's offer is examined one is struck immediately by the fact that, *First*,

no definite time of closing was fixed; *Second,* the term " Possession as soon as possible ", as contained in this offer, is rather indefinite; *Third,* the defendant never obligated herself to convey by a deed with covenant or to furnish a tax search. The purchaser's so-called " offer ", treating it as an acceptance of the defendant's terms of sale, arbitrarily fixed the closing date and construed the term " Possession as soon as possible ", as having been fully met by fixing the closing date May 1st. Leaving out of consideration every element except the two, namely — the date when this transaction was to be finally closed and possession of the property given — it seems reasonably clear that the instant listing agreement fell into the second class described in the *Arnold* case (*supra*). Plaintiffs took this agreement from defendant knowing its contents. As real estate brokers they must have known that with the offer not definite, either as to closing or possession, no binding contract of sale could be effected without negotiation. The transaction failed of consummation because of disagreement over these two features. The purchaser and seller were never brought into agreement upon them. Nor can defendant's refusal to accept Pomeroy as a vendee of her farm, on the terms which he offered, be deemed unreasonable. The testimony indicates clearly that, in the event of a sale of the bare farm, on account of labor conditions she wished to buy a smaller place, because there was no one to work the farm except her son, who could secure no help. Under the terms of the acceptance she would not know until May 1st whether or not she would actually sell her farm. She would hardly be in position to buy another until her title had been approved by Pomeroy, she had given a deed and had received the purchase price, $7,500. Yet, since the right of possession follows the legal title, on May 1st, as soon as she delivered her deed, she would have been required to move from the property at once, or subject herself to an action of ejectment. (*Teller* v. *Schulz,* 123 App. Div. 883, 885.) Had she bought or obligated herself to buy another property prior to the actual sale of her farm and then, for any reason, Pomeroy had refused to complete the transaction, her position would have worsened, because she would then have had two farms on her hands instead of one.

Moreover the construction which she placed upon the term " Possession as soon as possible ", that it applied to time subsequent to the delivery of the deed, seems the reasonable one. Certainly the term was used by her for some purpose. It cannot be said that she, thus, would be protecting her right of

possession prior to the giving of the deed, because a mere contract vendee is not entitled to possession except by agreement. On the other hand, as soon as she gave a deed, without reserving any right of possession thereafter, she would have had no such right. The expression " as soon as possible ", although there is authority to the contrary (*Sentenne* v. *Kelly,* 59 Hun 512; *National Cash Register Co.* v. *McCann,* 80 Misc. 165, affd. 160 App. Div. 912), ordinarily means " within a reasonable time." (*Brink* v. *Hanover Fire Ins. Co.,* 80 N. Y. 108, 112; *Williams* v. *Gridley,* 110 App. Div. 525, affd. 187 N. Y. 526; *Hinds* v. *Kellogg,* 13 N. Y. S. 922, 923, affd. 133 N. Y. 536.) Therefore, with these two terms, the closing date and the question of retained possession, which can hardly be considered as anything but essential terms of a final closing agreement, open, it is perfectly patent that these plaintiffs never completed their agreement by bringing these parties together upon them. On the authority of the decisions already cited, and treating defendant's offer to sell as falling into the second category of agreements of this kind, as classified in the *Arnold* case (*supra*), plaintiffs failed to bring the parties together on essential terms of sale not definitely expressed in the offer, and therefore they failed to establish their right to commissions.

Again treating the Pomeroy offer as an acceptance, it is not only defective in not strictly complying with the offer, in according to defendant a reasonable time after the delivery of the deed in which to give possession, but, also, in its requirement that defendant convey by warranty deed and furnish a tax search. Probably the item of a tax search would hardly be substantial enough, in and of itself, to have made the purchaser's acceptance defective. However, as already noted, the deviation from the offer, as to possession, was substantial. Nor can the requirement of a warranty deed, when the vendor had never obligated herself to give one, be treated as inconsequential. (*Leggett* v. *Mutual Life Ins. Co.,* 53 N. Y. 394, 399.) The rule that an offer to sell by good and sufficient deed is satisfied by any conveyance sufficient to pass title was early enunciated by the courts of this State in several cases, of which *Van Eps* v. *Corporation of Schenectady* (12 Johns. 436) is one. While the full rule declared in these earlier cases was limited in *Burwell* v. *Jackson* (9 N. Y. 535) insofar as the earlier decisions held that such a vendor was not required to convey an indefeasible title, they were not overruled as to the kind of deed required. *Delavan* v. *Duncan* (49 N. Y. 485, 487) makes this clear. *Van Eps* v. *Corporation of Schenectady*

(*supra*) is cited, and the rule as to the kind of deed which an offer, such as this defendant made, would satisfy, reiterated in *Emerick* v. *Hackett* (192 N. Y. 162). While in some other jurisdictions an agreement to convey by a good and sufficient deed is deemed to require a vendor to give an ordinary warranty deed, that is not the rule in this State. If a vendee insists upon a deed with covenant, his contract of sale must so provide. Therefore, since no binding agreement to sell was consummated, and since plaintiffs, as a condition precedent to the recovery of commissions, were obligated to show that their purchaser's acceptance complied exactly with the offer to sell (Restatement, Contracts, § 59; 1 Williston on Contracts [Rev. ed.] § 73), which it did not, they, again, failed to establish a right of recovery herein.

Nor can the failure of the defendant specifically to object as to the character of the deed, under the circumstances disclosed by this record, be treated as a waiver of the objection that the acceptance required a conveyance by warranty deed. The testimony warrants no other conclusion but that, upon her rejection of the purchaser's acceptance, defendant then made a counterproposal to sell upon his terms, provided plaintiffs could find for her a suitable farm which she could buy. Thereafter the parties negotiated on the basis of her counterproposal. Again, these negotiations proved unavailing. As already noted, there was no claim of bad faith on the part of defendant. Had plaintiffs found for the defendant a suitable farm, which she had then unreasonably refused to buy, the question whether there was a waiver of the term of her offer, as to the kind of conveyance she was required to give, would have become material. In *Wittwer* v. *Hurwitz* (216 N. Y. 259) a somewhat analogous situation was considered. Applying that case to the facts of this one, the defendant conditionally accepted Pomeroy's proposal. Thereby his proposal was rejected, and the defendant's counteroffer became the basis for negotiations, which never passed beyond that stage, before he withdrew it. Under such circumstances, the fact that the purchaser's acceptance did not comply with the terms of the offer, as to kind of deed to be given, was not waived.

The judgment and order should be reversed on the law, with costs, and complaint dismissed, with costs.

All concur. Present — CUNNINGHAM, P. J., TAYLOR, HARRIS, McCURN and LARKIN, JJ.

Judgment and order reversed on the law, with costs, and complaint dismissed, with costs.